No. 2287.

A. M. & DAN MORRISON v. THE INSURANCE COMPANY OF
NORTH AMERICA.

1. NOTICE.—The holder of a policy of insurance, who has an opportunity to inspect it before he accepts it, is chargeable with knowledge of its contents, in the absence of fraud, misrepresentation or concealment.
2. PLEADING.—A plea which seeks to avoid the effect of a restriction in a policy on the authority of the insurance company's agent, upon the ground that the policy was cunningly and ingeniously devised, and the restriction was so hidden away in masses of fine print that they were illegible and unintelligible, and was designed to defraud, is bad on specia-exception.
3. PLEADING.—Pleadings should state facts, and when the plea contains averments of legal conclusions predicated by the pleader on such facts, and not necessary to the full presentation of the right claimed, they should on motion be stricken out.
4. AGENCY.—Though a policy of insurance, upon its face, may provide that it shall not be valid unless countersigned by the company's general agent, who had power to issue and cancel policies and make renewals and endorsements of other insurance, and also that the procuring of other insurance on the property, "not made known to the company and consented to hereon," will invalidate the policy, yet if other insurance was obtained with the verbal consent of such agent, who promised to endorse his consent on the policy, and again afterwards made written memoranda of a renewal, but not on the policy, and no objection was made by the company, the company would be bound, and the consent of the company to the subsequent insurance can be shown otherwise than by endorsement on the policy.
5. WAIVER—POLICY OF INSURANCE.—A policy of insurance stipulated that "agents of this company have no authority to bind the company in violation of any of the printed terms or conditions of insurance, as herein expressed; and no printed or written restriction hereof, which by its terms may be subject to waiver, shall be deemed to have been waived, except by distinct. specific agreement, clearly expressed in the body of the policy." Held: That any condition in the policy which under its terms might have been waived in the body thereof, and not otherwise, must be deemed within the meaning of the stipulation, a condition or restriction "subject to waiver," and to such only does the stipulation apply.
6. INSURANCE—AGENCY.—An insurance company is chargeable with knowledge of the acts of its general agent, and when the company fails to promptly repudiate the act of such an agent, it will be held to have ratified such act by silence, when, if repudiation was intended, it was its duty to speak, through its constituted authority.

7. CONTRACT.—An insurance company that stipulates in a policy that it will only be bound by writing to any future contract in regard thereto, does not preclude itself from making a parol contract to change that stipulation; and if through its general agent the stipulation is disregarded, and the company fails to repudiate his act, when good conscience requires that if it be disaffirmed it should be done promptly, the company will be bound.

ERROR from Ellis. Tried below before J. W. Ferris, Special Judge.

Plaintiffs in error sued the insurance company of North America, on a fire policy for the sum of fifteen hundred dollars.

To the original petition, declaring on the policy, defendant answered: Setting up (1) a condition of the policy requiring other insurance, if any, be made known and consented to on the policy; (2) limitations and restrictions in the policy upon the authority of its agents; forbidding them to waive any written or printed condition of the policy, unless clearly expressed in the body thereof; (3) over insurance for more than the value of the property; (4) other insurance not made known to the company.

To this answer, plaintiffs interposed a supplemental petition, alleging, among other things, that if the policy contained any restrictions or limitations upon the authority of the company's agents, plaintiffs were not advised thereof; that the policy was so cunningly and ingeniously devised that the restrictions mentioned were so hidden away in masses of exceedingly fine print, that they were illegible and unintelligible, and were designed to defraud.

3. That the third subdivision of the conditions of the policy which professes to set out the "prohibitions" and circumstances under which the "policy will become null and void," did not advise them of any want of authority in the company's agents.

4. That T. L. McCarty, the local agent of the company, held himself out as authorized to perform all the duties incident to his agency; that the other insurance taken out by them was necessary and proper; that they at once informed McCarty of such other insurance and requested him to make the indorsement thereof on their policy; that McCarty made no objection thereto, but promised at his convenience to make the indorsements requested, as he had authority to do; that they relied on him to do as he had promised and fully believed he would do it; that

he failed so to do; that afterwards and just before the fire, they informed him of the amount of their stock and of the amount of insurance carried by them; that he made no objection thereto, but agreed to renew the policy at its expiration and continue it in force; that the property insured was destroyed before the expiration of the policy; that no offer was made to return the unearned premium after the fire; that subsequent to the loss. they were directed by Mr. Barry, the company's adjuster, to make proofs of loss as required by the conditions of the policy; that they did so in good faith and at great trouble and expense; that afterwards at the request of the adjuster, they furnished an amendment to their proofs at further trouble and expense, to which no objection was made; that in good faith they had furnished the company with all facts, known to themselves, concerning their loss; that no claim of the forfeiture of the policy was ever set up until since suit was brought. To this was added a plea of waiver and estoppel.

In response to these pleas, defendant filed a supplemental answer, setting up:

A special demurrer, insisting that by accepting the policy. plaintiffs were estopped from alleging ignorance of its contents; and further, that in the absence of any allegations constituting fraud, evidence in support of the matters pleaded was inadmissible.

3. A special demurrer, claiming, that by the terms of the policy, plaintiffs were precluded from relying on the acts of McCarty, the local agent, and Barry, the adjuster, as a legal defense.

4. A denial of the matters pleaded in the supplemental petition; allegations of full notice by plaintiffs of all the special terms and restrictions of the policy, and of the limitations imposed upon the powers of McCarty and Barry; that no acts of theirs could constitute a waiver or amount to an estopel; that the demands made upon plaintiffs after the loss were accompanied with notice from defendant that it waived none of its rights; that defendant was under no obligation to return any part of the unearned premium; that McCarty's and Barry's acts were beyond the scope of their authority as defined in the policy and had never been ratified by the company; that they had no powers beyond those named and limited in the policy; that by the matters pleaded in their original answer, the policy had

become forfeited, and that this forfeiture had never been waived.

The court sustained all the demurrers. To this ruling plain-tiffs excepted and filed a trial amendment.

This trial amendment, among other things, set forth: 1. That the provisions of paragraph 6, of the conditions of the policy, which contained the limitation upon the authority of agents, had no reference to the third subdivision of the conditions of the policy; that the restrictions upon the authority of agents was limited to the matters contained in said sixth paragraph.

2. The policy sued on was made a part of the trial amendment.

To this trial amendment, defendant responded with a second supplemental answer, excepting to so much thereof as set up the legal effect of the policy sued on, upon the ground that such averments were legal conclusions, rather than facts. The court sustained the demurrer and plaintiffs excepted.

Plaintiffs proposed to prove the facts alleged as to the character and construction of the policy; the notice to McCarty of the other insurance complained of by defendants; his promise to indorse it on the policy; his subsequent agreement to renew and continue it in force and other facts relating thereto as alleged in their first supplemental petition.

Upon objection to the proposed testimony, it was rejected by the court unless plaintiffs would first show an extension of the agent's authority subsequent to the issuance of the policy. Plaintiffs excepted.

A blank form of the policy sued on, was filled out, and made a part of the transcript; and it was agreed by counsel on both sides that the same should be inserted in the transcript, instead of copying the policy—to the end that the Supreme Court might have before it a correct copy, and be fully enabled to pass upon the matters pleaded in respect thereto.

Under a charge of the court so directing them, the jury brought in a verdict for the defendant.

*Edwards & Fear*, for plaintiffs in error, on their proposition, that the facts as to the nature, construction and arrangement of the policy were proper matters to be pleaded, cited Phœnix Insurance Company v. Slaughter et al., 12 Wallace, 406, 407; same case, Lawyer's Edition United States Supreme Court Reports, book 20, p. 445; Wood on Fire Insurance, sections 59, 60, 390, 396, 401; Carrugi v. Atlantic Insurance Company, 40 Georgia, 135;

same case, 2 American Reporter, 569; Piedmont & Arlington Insurance Company v. Young, 58 Alabama, 476; same case, 29 American Reports, 772; Pierce v. Nashua Insurance Company, 50 New Hampshire, 297; same case, 9 American Reports, 240; Van Schoick v. Niagara Insurance Company, 68 New York, 438; Hoffman v. Ætna Insurance Company, 32 New York, 414.

The acts of McCarty, the agent, as pleaded, were within the scope of his authority; and evidence in support of the allegations should have been admitted.    Crescent Insurance Company v. Griffin, 59 Texas, 513; New Orleans Insurance Association v. Griffin & Shook, Texas Law Review, vol. 6, No. 18, p. 280; Insurance Company v. Lyons, 38 Texas, 272, 273, 274; Wood on Insurance, sec. 383; Flanders on Insurance, 56, 57; Insurance Company v. Wilkinson, 13 Wallace, 235, 236; Insurance Company v. McCrea, 8 Lea, 513; same case, 41 American Reports, 655; Goodwyn v. Insurance Company, 73 New York, 495, 496.

The court erred in sustaining defendant's exception to plaintiff's trial amendment.    Wood on Insurance, sec. 57; Hoffman v. Insurance Company, 32 New York, 413.

The court erred in excluding the evidence offered by plaintiffs as shown by their first bill of exceptions.    Evidence as to the facts pleaded concerning the nature, construction and arrangement of the policy should have been submitted to the jury.    They cited Phœnix Insurance Company v. Slaughter et al., 12 Wallace, 406, 407; same case, Lawyer's Edition United States Supreme Court Reports, book 20, p. 445; Wood on Fire Insurance, secs. 59, 60, 390, 396, 401; Carrugi v. Atlantic Insurance Company, 40 Ga., 135; same case, 2 American Reports, 569; Piedmont and Arlington Insurance Company v. Young, 58 Ala., 476; same case, 29 American Reports, 772; Pierce v. Nashua Insurance Company, 50 N. H., 297; same case, 9 American Reports, 240; Van Schoick v. Niagara Insurance Company, 68 N. Y., 438; Hoffman v. Ætna Insurance Company, 31 N. Y., 414.

If notice of "other insurance" was given to McCarty, the agent who issued the policy, then, such notice to him, was like notice to the company he represented; his knowledge was the company's knowledge; his promise to make the endorsement on the policy was the company's promise; his subsequent agreement to renew the policy at its expiration was the company's

agreement; the company was estopped from setting up a forfeiture; the evidence offered to prove these things was competent and should have been admitted. (Abbott's Trial Evidence, 480, sec. 5; Id., 482, sec. 8; Gans v. Insurance Company, 43 Wis., 108; Webster v. Insurance Company, 36 Wis., 67.

*G. C. Groce,* for defendant in error: The facts alleged as to the nature, construction and arrangement of the policy sued on were immaterial. A person is bound to know and understand the contents of an instrument in his possession, as a party to it, and can not be heard to say that he did not read an instrument conferring rights on him, and which he is seeking to enforce. (Wade on Notice, sec. 657; Bigelow on Fraud, p. 73; Hawkins v. Hawkins, 50 Cal., 558; Swan v. Watertown Ins. Co., 96 Pa. State, bottom pp. 42, 43.)

An insurance company has the right to limit and restrict the powers and authority of its local and subordinate agents, and where restrictions and limitations are imposed on the power and authority of such agents, by the terms of the policy issued, the assured is bound to take notice of them. In such case the mode of action prescribed is the measure of such agent's power, and the company is not bound by his acts in contravention of such limitations and restrictions. (Phœnix Ins. Co. v. R. N. White, appealed to Court of Appeals from Ellis county to Austin term, 1886, transferred to Tyler and decided at Tyler term, 1886; First National Bank v. Lancashire Ins. Co., 62 Texas, 461; Wood on Ins., sec. 387, p. 631; Allen v. Farmers' Joint Stock Ins. Co., 64 N. Y., 469; Messereau v. Phœnix Ins. Co., 66 N. Y., 274; Walsh v. Hartford Ins. Co., 73 N. Y., 5; Marvin v. Ins. Co., 85 N. Y., 315 (39 Am., 657); Waynsboro Ins. Co. v. Connover, 98 Pennsylvania State, 384 (42 Am., 618); Mitchell v. Lycoming Ins. Co., 51 Pennsylvania State, 410, 411; Cotair v. American Life Ins. and Trust Co., 33 N. J., 487; Shuggart v. Ins. Co., 55 Cal., 408; Gladding v. Ins. Association, 66 Cal., 6 (Ins. Law Jour., vol. 13, number 12, p. 893); McCormick et al v. Springfield Fire and Marine Ins. Company, 66 California, 361 (Coast Review, vol. 20, No. 2, page 91); Ennis v. Sun Insurance Company, 67 California, 621.

STAYTON, ASSOCIATE JUSTICE. Every policy holder, in the absence of fraud, misrepresentation or concealment, must be held to have knowledge of the contents of the policy when he has

opportunity to examine it before he accepts it. To the pleading in which the appellants sought to excuse themselves from obligation to comply with the terms of the policy, on the ground that they were ignorant of its contents, not alleging fraud, misrepresentation or concealment, exceptions were properly sustained. The printed terms and conditions embodied in the policy were in very fine print, but from the fac simile found in the transcript it appears that they were legible, and it would be holding a very dangerous rule to assert that a party may be excused from being held to have knowledge of a contract to which he is a party, and under which he claims rights, by the fact that the instrument including the contract is difficult to read.

Every person having capacity to make a contract, in the absence of fraud, misrepresentation or concealment, must be held to have known what the words used in a contract made by him were, and to have known their meaning; and he must also be held to have known and fully comprehended the legal effect of the contract which the words used made. Contracts for insurance do not furnish exceptions to these rules.

The appellants, by their pleadings, undertook to declare the legal effect of certain provisions in the policy sued upon, making a fac simile of the policy a part of the pleading, and the court sustained an exception to so much of it. In this there was no error, for the pleadings of parties should state facts, and the averments of legal conclusions, drawn from the facts stated, are in no manner necessary to the full presentation of the right claimed.

The third section of the printed part of the policy contained the following provision: "The procuring of insurance on said property for more than its cash value, or the having of other insurance thereon, or any part thereof, valid or invalid, prior or subsequent, not made known to this company and consented to hereon, will render this policy null and void." The contract for insurance was made through one McCarty, the agent of the company at Ennis, Texas, and the policy, which was signed by the president and secretary of the company and by McCarty, provided "that this policy shall not be valid unless countersigned by said company's duly authorized agent at Ennis, Texas."

This agent of appellee was shown to have and exercise power to "issue and cancel policies for it; make renewals and endorsements of other insurance, when necessary, and collect

premiums." The appellee is a corporation, resident in the State of Pennsylvania, and incorporated under its laws. Such an agent was a general agent, whose knowledge was the knowledge of the company whose agent he was, and by whose acts, within the scope of his powers, his principal would be bound.

After the policy was issued, the appellants, without the previous consent of the agent, or any other person authorized to give the consent of the appellee, obtained insurance on the property covered by the policy in question. The defense was that this subsequent insurance, obtained without the consent of the company, evidenced by an endorsement on the policy, rendered it null. The appellants pleaded, and offered to prove, that A. M. Morrison, one of the plaintiffs, immediately informed McCarty, defendant's agent, of the "other insurance" complained of; that he made no objection thereto, but promised at his earliest convenience to endorse such "other insurance" on the policy; that the notice was given for the purpose of procuring such endorsement; that plaintiffs relied on said agent's promise, and believed that he would perform every duty necessary for their protection; that afterwards and just before their loss, McCarty arranged with them to renew the policy at its expiration, after being again informed of the amount of insurance they were carrying and the value of their stock; that he insisted upon making renewal; that he made a memorandum of the renewal in writing, but not on the policy; that he did not object to the amount of insurance carried by plaintiffs on their stock, but was eager to renew the policy at its expiration; that from McCarty's conduct they believed their policy to be in force up to the time of the loss.

The policy having been made an exhibit to the appellant's pleadings, the court sustained an exception to so much of the pleadings as set up those matters, on the ground that no consent of the agent to subsequent insurance, under the terms of the policy, could be shown otherwise than by an endorsement upon it. The appellants filed a trial amendment, in which they alleged that the agent, since the policy issued, had been given other power than such as the policy gave, and that under this the acts of the agent, pleaded, would bind the company. There was no evidence, however, offered to sustain this last pleading, and, because of this, the evidence above referred to was excluded, and the court directed the jury to return a verdict for the defendant. Under the provision of his policy which we have

set out, and the evidence showing the nature of the agency of McCarty, if nothing further affecting the power of the agent was contained in the policy, the case of Crescent Insurance Company v. Griffin & Shook, 59 Texas, 509, would be conclusive of the liability of the appellee under the facts alleged and proposed to be proved. We see no reason to doubt the correctness of the decision made in that case, which is well sustained by the cases therein cited, as well as by the following: Insurance Company v. McCrea, 8 Lea, 513; Caerngi v. Insurance Company, 40 Georgia, 140; Insurance Company v. Young, 58 Alabama, 476; Pierce v. Insurance Company, 50 New Hampshire, 297; Jones v. Marine Insurance Company, 43 Wisconsin, 111; Insurance company v. Earle, 33 Michigan, 143; Insurance Company v. Lyons, 38 Texas, 253; Insurance Company v. Griffin & Shook, 66 Texas, 232.

The policy, however, in its sixth printed section, contains, among many other declarations, the following: "Agents of this company have no authority to bind the company in violation of any of the printed terms or conditions of insurance as herein expressed; and no printed or written condition or restriction hereof, which by its terms may be subject to waiver, shall be deemed to have been waived, except by a distinct, specific agreement, clearly expressed in the body of the policy."

It is insisted that, under this, no act of the agent, looking to consent or acquiescing in subsequent insurance, could bind the company unless he endorsed his consent on the policy. The true construction of the provision in the policy last quoted, is not entirely clear. It recognizes the fact that there are terms and conditions in the policy which may be waived, and others which may not be. It further recognizes the fact that such conditions as are therein referred to which may be waived are such as must be waived, if waived at all, by an agreement entered into at the time the policy is executed; for it provides that such conditions or restrictions as are subject to waiver can be waived only by a specific agreement, clearly expressed in the body of the policy.

By the body of the policy we understand to be meant the entire face of the policy in its orderly arrangement existing at the time it is delivered. Looking to the entire policy, and especially to that part of its third printed section which we have quoted, it could not be claimed that it was intended that the consent to subsequent insurance must enter into the body of the

policy, for it provides that this consent may be given by endorsement made on the policy. If, however, the insured desired to have the right to obtain subsequent insurance without the consent of some one authorized to give it after the policy issued, then, under the sixth section, it would be necessary that this should be provided for in the face of the policy.

That this and like waivers to be made before or at the time the policy issued were what was intended, is evidenced by the fact that the policy in question, as we understand it, on its face gave to the insured the right to obtain additional concurrent insurance to the amount of five thousand dollars, without further consent.

Any condition in the policy which, under its terms, might have been waived in the body thereof, and not otherwise, must be deemed within the meaning of the sixth section a condition or restriction " subject to waiver;" and to such only, we are of the opinion, has so much of the sixth section as we have quoted any application. The first and third subdivisions of section three embrace many acts or matters which it is declared shall operate a forfeiture of rights under the policy, unless an express agreement to the contrary be made in the body of the policy, while the second subdivision of the same section, as well as the third subdivision, embrace many matters and acts permissive if consent to their doing, be given by indorsement on the policy.

The authority of the agent, McCarty, to have bound the appellee by indorsing consent to subsequent insurance is not questioned, and the sole ground on which liability is denied is that, although he may have consented, he did not evidence his consent by an indorsement on the policy. A provision in a policy which declares that "the procuring of insurance on said property for more than its cash value, or the having of other insurance thereon, or any part thereof, valid or invalid, prior or subsequent, not made known to this company and consented to hereon, * * * * * * * * * will, under this policy, be null and void," is, in effect, but a provision that the person who has power to give consent must evidence this in the manner prescribed. The cases cited show that consent not indorsed by writing on or in a policy containing such a claim will bind the company, when established, as fully as would the written consent, when acted and relied upon by the insured.

A provision that an agent shall not have power to evidence his consent to subsequent insurance, except by a writing on the pol-

icy, he having the power to give the consent of the company, it would seem would no more make it imperative that the agent should give consent, if at all, in the manner prescribed, than does a general declaration declaring a forfeiture of all rights under a policy, on account of named acts, unless the consent of the agent is given thereto by a writing upon the policy; and, therefore, no greater effect should be given to the first clause of that part of section six quoted, if it be applicable to consent to subsequent insurance, than should be given to that part of section three above set out. The ground on which insurance companies, under policies like that before us, are held liable for the acts of their agents done in the exercise of lawful power, but not in the manner prescribed by the policy, is that the agent represents the company, and through him they have knowledge of every fact of which their agents have knowledge, and by failure promptly to repudiate their acts, are held to ratify them, or to be estopped by their silence when they ought to have spoken  If the facts existed as appellants proposed to prove them, application for consent to subsequent insurance was made to the agent who had power to give it. This the company must be held to have known. He gave consent, but not in the manner prescribed in the policy. This the company must also be held to have known.

Subsequent insurance did not *ipso facto* annul the policy, but the company might elect to give it that effect or might waive it. Having knowledge of the facts, it was the duty of the company to manifest its intention as to this promptly, and, having failed to do so, it ought to be held to have waived the right to treat the policy as null, when it knew that by the act of its own agent the insured had been led to believe that the policy was in full force. It is not so much by force of the fact that the agent gave a verbal consent to the subsequent insurance that the appellee should be held bound, as because the company itself must be held, having knowledge of what he had done, to have ratified the consent given by him, though it may not have been given in the manner prescribed by the policy. If the policy limited the power of the agent it imposed no limitations on the power of the company itself, and, as said by the Supreme Court of Michigan in considering a provision in a policy similar to those found in the policy before us: "The condition literally applied would prevent any unendorsed consent by the company itself, by instruction of its board, or by act of its officers, as effectually as

by anyone else. And the case seems to settle down to the sim-
ple question whether a person who has agreed that he will only
contract by writing in a certain way precludes himself from
making a parol bargain to change it. The answer is manifest.
A written bargain is of no higher legal degree than a parol one.
Either may vary or discharge the other, and there can be no
more force in an agreement in writing not to agree by parol than
in a parol agreement not to agree in writing. Every such agree-
ment is ended by the new one which contradicts it." (Insurance
Co. v. Earle, 33 Mich., 153; Insurance Co. v. McCrea, 8 La., 524.)

This finds application in contracts to be implied from silence
where the party to the contract ought to have spoken, as well
as in express contracts. What the agent of the appellee did
was within the scope of his powers, even if the manner in
which he exercised those powers was not that pointed out by
the policy; and the latter fact can not relieve the appellee from
notice of all the facts known to its agent. We may say, under
the facts the appellants proposed to prove, as was said by the
Court of Appeals of New York in a case including a like ques-
tion: "We are also of the opinion that the defendant was
bound on receipt of the notice of * * (the subsequent insurance)
to immediately repudiate the act of the agent in giving such
consent if it supposed he had acted without authority, or it
must be held liable for the power he assumed to possess, upon
the ground that it has acquiesced therein and authorized the
plaintiff to rely thereon. It had no right to remain silent and
suffer the insured to lay by and forego other insurance upon his
property and subject him to the hazard of eventual loss upon
the assumption, which he was authorized from its silence to
indulge, that the act of the agent was approved by it, and that
there still remained in him, notwithstanding (the subsequent
insurance), a valid insurance upon his property." (Benning-
hoff v. Ins. Co., 93 N. Y., 503.)

The court below erred in sustaining the exception to appel-
lant's supplemental petition; and in excluding the evidence
tending to show that the agent was notified of subsequent
insurance, and agreed to the same and promised to indorse his
consent on the policy, as well as the other evidence offered in
immediate connection with these matters. We are of opinion,
however, that the appellee did not waive any right it may
have by the objections made to the proof of loss, for in the first
communication made to the appellants, in regard to the loss,

the objection of subsequent insurance in excess of that allowed by the appellee was urged, and there is nothing in that communication which evidences an intention of the insurance company to waive any right it then had.

For the reasons stated, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered December 20, 1887.