### HIBERNIA INSURANCE COMPANY v. I. MALEVINSKY.

### No. 471.

1. **Insurance—Waiver of Conditions—Estoppel.**—An insurance company is estopped from claiming a forfeiture of its policy when it accepts and retains the premium with notice of the facts constituting the grounds of forfeiture.   The company is charged with notice if its agent, with power to issue the policy and receive the premium, had notice at the time he exercised such power.

2. **Duty of Agent—Waiver—Insurance Policy.**—It is the duty of the agent to inform his principal of acts known to him inconsistent with the terms of the policy; and if he fails to do so, it is the fault of the agent toward his principal, and will not exonerate the latter from liability from nonaction upon the facts affecting the policy known to the agent.

3. **Waiver—Acts of Agent.**—An insurance agent having the power to issue a policy, the power to continue it upon goods removed from one store house to another, and to stipulate the amount of other concurrent insurance, his acts would be the acts of the company, and it would be bound by the issuance by such agent of a policy at the time there was over insurance in excess of that allowed by the face of the policy so issued.

4. **Same.**—The restriction on the face of an insurance policy, that its terms shall not be altered by any agent, does not inhibit such alteration or waiver by the company, through its agent.

5. **Charge.**—When a charge is given by the court applicable to a contested issue in the case, the repetition of the substance of such charge when asked by a party is properly refused.   See example.

6. **Act of Agent.**—It being shown that the agent writing the policy had knowledge of over-insurance upon the property insured, it was not necessary in order to fix liability upon the company to show any affirmative action by such agent upon such facts.

APPEAL from Travis.   Tried below before Hon. W. M. KEY.

*Fisher & Townes*, for appellant.— 1.  The appellee's petition setting out the limitations on the amount of concurrent insurance which the appellant might carry, and showing that said limitations were part of the written contract, he is, in absence of fraud, accident, or mutual mistake,

bound thereby; and as his petition showed, that at the time of taking out said policy, and continuously since that time up to the fire, and at that time, he had more concurrent insurance than was permitted in the contract, and failed to allege either fraud, accident, or mutual mistake, the demurrer should have been sustained. Ins. Co. v. Blum, 76 Texas, 653; Johnson v. Ins. Co., 43 N. W. Rep., 60; Zimmerman v. Ins. Co., 42 N. W. Rep., 462; Sanders v. Cooper, 115 N. Y., 279; Cleaver v. Ins. Co., 32 N. W. Rep., 661.

2. This is practically a suit to reform the contract of insurance as to the amount of concurrent insurance which might be carried by appellee, on ground of mistake, and to enforce it as thus reformed. To entitle him to do this " the mistake must be mutual and common to both parties. It must appear that both parties have done what neither intended. A mistake on one side may be a ground for rescinding but not for reforming a contract. When the minds of the parties have not met, there is no contract, and hence none can be rectified." Hearne v. Ins. Co., 20 Wall., 491; Page v. Higgens, 5 L. R. A., 157, and note; Moran v. McLarty, 75 N. Y., 25; Jackson v. Andrews, 59 N. Y., 244, 247, 249; Nevins v. Dunlap, 33 N. Y.; Story v. Conger, 36 N. Y., 673.

3. When a party accepts the terms of a written instrument, having full and ample opportunity to examine and understand it, he is bound thereby, and he can not avoid it on the ground that it does not speak the contract as he understood it, and in the absence of fraud or mutual mistake he can not reform and enforce it. Moran v. McLarty, 75 N. Y., 29; Smith v. Ins. Co., 43 N. W. Rep., 811; Cotair v. Ins. Co., 33 N. J. L., 491; Cleaver v. Ins. Co., 32 N. W. Rep., 662; Miller v. Powers, 4 L. R. A., 488.

4. The limitations on the power of the agent as to his right to waive the stipulation, etc., of the contract embodied in the policy sued on, are not contrary to public policy, but are reasonable and just in themselves. They do not bind the future conduct of the company, and it could of course waive them, or it could by authority given subsequent thereto authorize its agents to do so; but E. T. Eggleston & Co. could not without authority from the company, subsequent to this contract, by any act of theirs, enlarge their powers in the premises and bind the company in so doing, and it was error in the court to charge the jury that they had such power and to refuse the special charge number 4, asked by appellant, correcting this error. Mech. on Agency, secs. 275–291, cases cited, notes 6 and 7 to sec. 281; Rust v. Eaton, 24 Fed. Rep., 830; Cleaver v. Ins. Co., 32 N. W. Rep., 662.

*J. L. Peeler*, for appellee.—1. Where other insurance is required to be endorsed upon the policy, if notice thereof is given to the insurer or its agent, and consent is not endorsed nor the policy cancelled, further

compliance is treated as waived, and the insurer is estopped from setting up such other insurance to defeat its liability upon the policy. Ins. Co. v. Lyons, 38 Texas, 253; Morrison v. Ins. Co., 69 Texas, 358; Ins. Co. v. Griffin & Shook, 59 Texas, 510; Cobb v. Ins. Co., 11 Kans., 93; Pechner v. Ins. Co., 65 N. Y., 201; Fishbeck v. Ins. Co., 54 Cal., 427; Roberts v. Ins. Co., 41 Wis., 326; Putnam v. Ins. Co., 18 Blatch., 368; Brandup v. Ins. Co., 27 Minn., 393; Ins. Co. v. Boyer, 27 N. E. Rep., 628; Ins. Co. v. Marple, 27 N. E. Rep., 633; Life Ins. Co. v. Keach, 32 Ill. App., 427; Ins. Co. v. Spiers, 8 S. W. Rep., 305; Wood on Fire Ins., 838, notes 1–3; Id., 833, notes 2–5, and authorities cited.

2. It is well settled by the great weight of authority, that the issuing of a policy by an agent with knowledge of facts constituting a forfeiture estops the insurance company from setting up same as a defense. Ins. Co. v. Ives, 56 Ill., 402; Ins. Co. v. Deford, 38 Md., 382; Ins. Co. v. Lewis, 30 Mich., 41; Ins. Co. v. Jackson, 83 Ill., 302; Ins. Co. v. Garfield, 60 Ill., 124; Gershauser v. Ins. Co., 7 Neb., 174; Field v. Ins. Co., 6 Biss., 121; Russell v. Ins. Co., 55 Mo., 585; Hadley v. Ins. Co., 55 N. H., 110; Ins. Co. v. Shipman, 77 Ill., 189; Ins. Co. v. McGuire, 52 Miss., 227; Carr v. Ins. Co , 2 Mo. App., 446; Fire Ins. Co. v. Kranich, 36 Mich., 289; Mers v. Ins. Co., 68 Mo., 127; Hayward v. Ins. Co., 2 Ins. L. J., 503; Ins. Co. v. Taylor, 73 Pa., 342; Ins. Co. v. Banninger, 73 Ill., 230; Sherman v. Ins. Co., 39 Wis., 104; Pitney v. Ins. Co., 65 N. Y., 6; Pechner v. Ins. Co., 65 N. Y., 195; Roberts v. Ins. Co., 41 Wis., 321; Ins. Co. v. Luttrell, 89 Ill., 314; Richardson v. Ins. Co., 5. Hun, 472; Richmond v. Ins. Co., 79 N. Y., 230; Ins. Co. Gallatin, 48 Wis., 37; Fishbeck v. Ins. Co., 54 Cal., 422; Ins. Co. v. Maguire, 51 Ill., 342; Miner v. Ins. Co., 27 Wis., 693; Mechlen v. Ins. Co., 38 Wis., 665; Winans v. Ins. Co., 38 Wis., 342; Ins. Co. v. Earle, 33 Mich., 143; Wood on Fire Ins., sec. 88, note 1, and authorities cited.

3. E. T. Eggleston & Co. were the agents of appellant, and had authority to verbally waive the condition in the policy as to other insurance. Morrison v. Ins. Co., 69 Texas, 359; Ins. Co. v. Griffin & Shook, 59 Texas, 510; Pitney v. Ins. Co., 65 N. Y., 21; Miner v. Ins. Co., 27 Wis., 697; Ins. Co. v. Earle, 33 Mich., 143; Grubbs v. Ins. Co., 13 S. W. Rep., 236; Dietz v. Ins. Co., 31 W. Va., 851; Ins. Co. v. Ruckman, 127 Ill., 364; Ins. Co. v. Spiers, 8 S. W. Rep., 305; Alexander v. Ins. Co., 30 N. W. Rep., 727.

COLLARD, Associate Justice.—Appellant states the nature and result of the suit, which appellee accepts as correct, as follows:

" This is a suit brought by the appellee in the District Court of Travis County, on September 27, 1889, for $1250 claimed to be due under an insurance policy issued by the appellant on October 4, 1888, for the term of one year, on a stock of general merchandise, situated in the city of

Austin, Texas, and which was partially destroyed by fire, damaging same $10,000.

"Appellee further alleged, that the amount of concurrent insurance permitted by his policy, as written, was $8750, and that he had more than that amount at the date of the issuance of the policy, and also at the date of the fire, but further averred that appellant, through its agents, knew of the existence of said insurance and the amount thereof at and before writing said policy, and subsequently accepted premiums paid on same, and that it was thereby estopped from insisting upon the amount limited upon the face of the policy; and further set out, that after the fire there was an agreement to arbitrate the loss among all the different companies having insurance on the property, including appellant, and the appellee, and that the loss was so arbitrated and prorated, and that by reason thereof he had accepted a less sum from the other insurance companies for his goods than he would have been entitled to and would have gotten, if the appellant had not gone into this arrangement, and that for that reason also appellant was estopped from denying liability to him.

" On November 7, 1889, appellant filed its answer, consisting of a general demurrer and general denial, and also setting up appellee's over-insurance, and claiming that under the terms of the policy this over insurance destroyed the policy; and denying expressly any knowledge of said over-insurance, or having directly or indirectly agreed or assented thereto, or having accepted any premiums after being advised thereof, and also denying the giving of any proof of loss by appellee, or any waiver thereof by appellant.

"The case was tried before the court and a jury on April 14, 1891, resulting in verdict and judgment for appellee for $1029.71 principal, and $129.28 interest and costs. Appellant made a motion for a new trial, which being overruled, an appeal was taken to this court and the record perfected, and the cause is now here for revision."

*Opinion.*—Defendant below filed a general demurrer to the petition, which was overruled by the court, and now insists that the ruling was error.

We understand from the propositions insisted upon by appellant that the objection specially relates to the following portion of the petition:

" Plaintiff further represents, that one of the conditions in said policy was that the same should be void unless otherwise provided by agreement endorsed thereon or added thereto, if plaintiff had or should hereafter make or procure any other contract of insurance, whether valid or not, on said property, in whole or in part; plaintiff says consent for other insurance on said property was endorsed by defendant on said policy in the following words, at the time same was issued, viz., ' permission for $8750 other insurance concurrent herewith,' and at

the time of said fire plaintiff held additional concurrent insurance on said property as follows:    Policy of the Ætna Insurance Company, of Hartford, Connecticut, number 525, issued July 29, 1888, for $2500; policy of the Pennsylvania Insurance Company, of Philadelphia, number 202, issued July 28, 1888, for $2000; policy of the Home Insurance Company, of New York, number 1242, issued July 28, 1888, for $2000; policy of Phœnix Insurance Company, of Hartford, Connecticut, number 3875, issued February 27, 1889, for $1250; policy of the Phenix Insurance Company, of Brooklyn, New York, number 867, issued October 14, 1888, for $1500; and the policy herein sued on, amounting in all to the sum of $10,500 insurance on said property at the time of said fire.    Plaintiff says, that although he had a greater amount of insurance on said property than the policy in suit provided for, but that nevertheless the defendant, through its duly and legally authorized agents, E. T. Eggleston & Co., they having authority so to do, waived the above mentioned condition at the time said policy was issued, and that the defendant is now estopped from relying on or enforcing said condition in any manner whatever, because he says that said L. N. Goldbeck, member of the firm of E. T. Eggleston & Co., as aforesaid, wrote said policy for the defendant in Austin, Texas, on the 4th day of October, 1888; that at the time said policy was written, or before the same was delivered to plaintiff, he, plaintiff, notified said Goldbeck in person, and as agent of defendant, that he already had $9250 of other insurance on said property, and that when he received the policy herein sued on he would then have $10,500 insurance on said property; that said Goldbeck did not object either to said $9250 or said $10,500 insurance, but upon the contrary, he said it was all right, and then and there, after he had been notified of other insurance as aforesaid, demanded and received from plaintiff the sum of $18.15 premium for issuing said policy, and that immediately after which said Eggleston & Co. paid said sum of money, less their commission, to the defendant.

" Plaintiff says, that the defendant is also estopped from insisting on or enforcing the aforesaid condition, because he says that on or about the 27th of February, 1889, in Austin, Texas, he again notified E. T. Eggleston & Co., in person, and as the agents for defendant, that he had $10,-500 insurance on said property; that said Eggleston & Co. did not object to said $10,500 insurance, but upon the contrary, they said it was all right, and then and there, after they had been notified of such insurance, demanded and received from plaintiff an additional premium of $3.40 on said policy, and immediately after which they paid said sum of money, less their commission, to the defendant, and that said defendant has never cancelled or offered to cancel said policy, or to return said premiums to plaintiff, or any part of same."

. There was no error in overruling the demurrer.    An insurance com-

pany is estopped from claiming a forfeiture of its policy when it accepts and retains the premium with notice of the facts constituting the forfeiture. The company itself would be deemed to have notice if its agent, with power to issue the policy and receive the premium, had notice at the time he exercised such power. The same principles apply when an agent, with knowledge of acts on the part of assured working a forfeiture, having authority so to do, accepts a premium for a renewal of the policy, or additional consideration for increased risk. In such cases the forfeiture is waived by the company if it retain the premium or additional price. It is the duty of the company to object, and claim forfeiture, at the time it is deemed to have notice of a breach of the conditions of the policy. It can not receive the premium without objection, and upon loss claim the right to repudiate. It should act promptly; otherwise it waives the forfeiture. The company is affected with notice through the knowledge of its agent, legally authorized to do the act constituting waiver. The waiver is by the company, and will bind the company, upon the doctrine that it has notice through its agent. Ins. Co. v. Lee, 73 Texas, 646; Ins. Co. v. Ende, 65 Texas, 118; Morrison v. Ins. Co., 69 Texas, 363; Cohen v. Ins. Co., 67 Texas, 328; Ins. Co. v. Shook, 59 Texas, 510; Ins. Co. v. Blum, 76 Texas, 653; Ins. Co. v. Griffin, 66 Texas, 232; Ins. Co. v. Lyons, 38 Texas, 253; Wood on Fire Ins., secs. 89, 90; Ins. Co. v. Garfield, 60 Ill., 124; Hadley v. Ins. Co., 55 N. H., 110; Sherman v. Ins. Co., 39 Wis., 108; Richmond v. Ins. Co., 79 N. Y., 239; Ins. Co. v. Wells, 89 Ill., 82; Fishbeck v. Ins. Co., 54 Cal., 422; Roberts v. Ins. Co., 41 Wis., 321; Pitney v. Ins. Co., 65 N. Y., 23; Rawley v. Ins. Co., 36 N. Y., 550; Von Bories v. Ins. Co., 8 Bush (Ky.), 133; Hornitz v. Ins. Co., 40 Mo., 557; Hubbard v. Ins. Co., 33 Iowa, 325; Couch v. Ins. Co., 37 Conn., 248; Peckren v. Ins. Co., 6 Lans., 411; Post v. Ins. Co., 43 Bush, 351; Ins. Co. v. Taylor, 73 Pa. St., 342; Glouster Manf. Co. v. Ins. Co., 5 Gray, 498; May on Ins., secs. 129, 369, 370; Ins. Co. v. Gallatin, 48 Wis., 36.

The agent's powers may be restricted, and he may not have the power to waive; but this does not affect the power of the company to waive. It is the duty of the agent to inform his principal of acts known to him inconsistent with the terms of the policy, and if he fail to do so, it is the fault of the agent towards his principal, and will not exonerate the latter. Von Bories v. Ins. Co., supra.

Testing the petition by the foregoing rules, it must be held sufficient to show a good cause of action.

The petition showing a good cause of action upon the grounds stated, other objections to it upon other grounds need not be considered, as they could not be reached except upon special demurrer, which was not pleaded. But we will not be understood as holding that the petition was defective upon other points.

The policy declared on was offered in evidence by the plaintiff, executed and signed by the president and attested by the secretary of the company, and delivered, for the consideration of $18.15 paid by the assured to defendant, and acknowledged paid in the body of the instrument. It contained the following: "Permission for $8750 other insurance concurrent herewith." It also contained the following: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power, or be deemed or held to have waived such condition or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured, unless so written or attached."

Endorsed on the policy is the following:

"AUSTIN, TEXAS, February 27, 1889.

"The within insured property having been removed from location herein described to the stone metal-roofed building, two stories in front, one story in rear, occupied by assured as a dry goods store, and tenant as a wholesale liquor store, situated number 115 East Pecan (Sixth) Street, in block number 56 of Austin, Texas, this policy is transferred to cover the same at new location.

"Risk ceasing at former location from date hereof.

"Rate at new location 1.90 per cent.

"Rate at old location 1.45 per cent.

"Collected from assured $3.40 for difference in rate.

[Signed]    "E. T. EGGLESTON & Co., Agents."

The goods of plaintiff were removed, as alleged, to the stone house, and the additional amount paid for increased risk as alleged.

The original policy and the amendment thereof were obtained from and signed by E. T. Eggleston & Co., duly commissioned by the company as agents "to receive applications for insurance, moneys for premiums, and to countersign, issue, and renew policies of insurance signed by the president and attested by the secretary," subject to the rules and regulations of the company and such instructions as may be from time to time given by the officers. L. N. Goldbeck was a member of the firm of E. T. Eggleston & Co. The firm keep blank policies of the company, signed by the president and secretary, countersign the same,

solicit insurance, fix the amount of insurance, receive premiums, and issue policies.

At the time the policy issued, and at the time of the removal of the store to the stone house on Pecan Street, and transfer of the policy to the goods at that place, Goldbeck, of the firm of E. T. Eggleston & Co., knew that the plaintiff had, with the policy sued on, insurance amounting to $10,500, having been so informed by the plaintiff—at least the jury so found upon evidence sufficient to warrant the finding—and when Goldbeck was so informed he agreed thereto, and said it was all right.

We do not think the court erred in admitting the testimony of the witness Malevinsky, the plaintiff, to prove such knowledge of defendant's agent, or that the agent assented thereto. Such knowledge and assent by the agent, as we have before seen, would estop the company from claiming the forfeiture set up in defense of the action, whether it was endorsed on the policy or not.

We hold the same view as to the testimony of the same witness as to the knowledge and assent of the agent of the same facts at the time of removal of the goods to Pecan Street and the payment of the additional premium for the increased risk.

The court instructed the jury, that "Under the written authority from defendant to E. T. Eggleston & Co., and other evidence upon the subject, said Eggleston & Co. were the agents of defendant, and had the power, without making any endorsement upon or added to the policy, to waive the right to object to the policy sued on on account of excessive concurrent insurance, and to consent to other concurrent insurance in excess of the $8750; and they also had the authority to cancel or repudiate said policy because of the excessive concurrent insurance; and if they knew that the plaintiff was relying upon said policy as valid, then it was their duty to cancel or repudiate the same, if they knew he had such excessive concurrent insurance."

Upon the same subject the defendant asked the court to charge as follows:

"The policy sued on provides, that no waiver of any of its provisions and conditions can be made except by its duly authorized agents, and then such waiver must be in writing, and you will not consider any matter set up and attempted to be proven as a waiver of any of such conditions unless such waiver is in writing."

The fact that the agent, having the power to issue policies and represent the company, has notice of excessive insurance not endorsed, the policy being permitted to run, constitutes a waiver, upon the ground that his knowledge is the knowledge of the company. He represents the company in such case, and the company is bound to the same extent as it would be by its own acts, though there be a stipulation that waivers by an agent must be endorsed in writing on the policy. Such a waiver is as

effective as if endorsed on the policy. It has the effect to estop the company as fully as if endorsed.

Applying this principle to the facts of this case, it must be held that the agents did waive the endorsement.

With knowledge of the fact of excessive insurance, it was the duty of the company to restore the unearned part of the premium; and upon failure to do so, the waiver was complete and the company was estopped.

It has been held by our Supreme Court, that to deliver a policy, with knowledge of facts which would avoid it, and then to insist upon the facts as a ground of avoidance, would be to attempt a fraud. Ins. Co. v. Ende, 65 Texas, 123.

In Cohen v. Insurance Company, 67 Texas, 328, the court said: "There can be no doubt that an insurance company, through its authorized agent, may contract by parol for the renewal of a policy, although it may be stipulated on the face of the instrument itself that this shall not be done."

In the case of Insurance Company v. Lee, 73 Texas, 646, the court used the following language: "The limitations contained in a policy as to powers of the agents of the corporation and the manner of their exercise are not conclusive. The corporation can not so limit or regulate its own powers to contract, and if it chooses to bind itself through its agents otherwise in any respect, it may unquestionably do so. If the act is within the scope of the authority of the agent at the time it is done, it will be binding upon the corporation, without reference to its conformity to restrictions contained in the policy." The reason of the rule, the court says, is " that the agent represents the company, and through him it has knowledge of every fact of which its agents have, and by failing to promptly repudiate such acts it is held to have ratified them, or to be estopped by its silence when it ought to have spoken." Morrison v. Ins. Co., 69 Texas, 363; Ins. Co. v. Blum, 76 Texas, 653.

In this case it can not be denied that the agents had the power to issue the policy permitting the other insurance claimed to be excessive, and the power to continue it upon the goods removed, and to stipulate the amount of other concurrent insurance allowed. In such case the acts of the agent would be the acts of the company, and the company would be bound, though the prescribed form of exercising the power was not followed.

We conclude there was no error in refusing the requested charge.

From the foregoing it will be seen that it was not necessary for the court to instruct the jury as to notice of the contents of the policy imputed by law to plaintiff, or in refusing a special charge asked by defendant upon the subject. It was immaterial whether plaintiff knew how much additional insurance was permitted by the endorsement on the policy, or not. The endorsement permitted only $8750. If plaintiff

knew this, it would not affect the liability of the company, upon the grounds before discussed.

The appellant insists that the court erred in "refusing the second special instruction asked by defendant, relating to the written agreement to arbitrate the amount of damage occasioned by the fire."

The following is the requested charge: "The written agreement submitting the matter of the amount of loss sustained by the plaintiff by the fire, by its terms expressly limits its scope and effect to an estimate of the amount of such loss, and you can not consider said agreement nor award for any purpose except to enable you to fix the amount of damage done to the said stock of goods by said fire, and you will not give it any other weight in any other connection in the case."

The court's charge upon the subject is as follows: "3. The uncontroverted testimony clearly shows that plaintiff was the owner of the property alleged to have been injured by the fire, and that the fire occurred at the time and place alleged, and injured said property; and that at the time of the issuance of said policy, and of the fire, plaintiff had $9250 additional insurance to the $1250 claimed in this suit; and that after the fire plaintiff and defendant and other companies agreed upon appraisers to assess the damage done to said property by the fire, and said appraisers did assess and fix such damage at $8650. But the written appointment of said appraisers having stipulated that the fact of such submission to appraisement should not be construed as a waiver of any rights defendant had under said policy, the jury are instructed that by submitting the amount of loss to appraisement the defendant did not waive any other right it had under the policy. But defendant having by its letter, dated September 21, 1889, and in evidence, denied all liability to plaintiff under said policy, and refused to consider the proof of loss sent to it, is held in law to have waived the right to have such proof of loss presented within thirty days."

We adopt the statement in appellant's brief upon this question as stating the facts correctly.

"The stipulations of the policy as to agreement to arbitrate are as follows: 'In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage; and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expenses of the appraisal and umpire.

" ' This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or to any examinations herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers, when appraisal has been required.'

" The agreement to arbitrate is as follows:   ' In consideration of the terms of the policy of insurance issued by the above company to I. Malevinsky and pursuant thereto, and of the loss alleged thereunder:

" ' It is agreed by I. Malevinsky, of the first part, and the Phenix Insurance Company and such other insurance companies as sign this agreement, parties to the second part, that A. T. McKeen and I. Reinhardt shall be and they are hereby appointed as appraisers, to appraise and estimate, at the true cash value, the loss and damage by fire and water to the property belonging to I. Malevinsky as specified below, which appraisement and estimate by them, in writing, as to the amount of such loss or damage shall be binding on both parties, if made in accordance with the terms thereof, but to be binding only so far as regards the actual cash value of or damage to such property covered by policy numbered 867 of said company, issued at Austin, Texas, agency.

" ' No question other than the actual cash value of and damage to the property aforesaid is submitted hereby, nor any construction of, or matter of difference within, the terms and conditions of the policy aforesaid. This submission is not to be taken as a waiver by the said company of any rights under said policy, but upon the contrary, all rights whatsoever are expressly reserved, and the said company stand as to them as though this submission had not been made.

" ' The property upon which loss and damage is to be estimated and appraised is on his stock of staple and fancy dry goods, ladies' underwear, notions, and such other merchandise as is usually kept for sale in a general dry goods store.

" ' It is further agreed, that the appraisers shall take into consideration the age, condition, and location of said property previous to the fire; also the value of any material and any portion of said property which have been saved; and after making an estimate of the cost of repairing or replacing said property, a proper deduction shall be made by them for the difference between the value of new or replaced property and the property insured and destroyed or damaged.   They shall also estimate what was the actual cash value before the fire of the property which has been destroyed.   They shall exclude from their estimate of damage any sum upon account of previous depreciation from age, location, ordinary

use, or any cause whatever, and are simply to arrive at the actual damage caused by said fire, and from no other cause.

" ' Witness our hands, at Austin, this 25th day of June, 1889.

" ' I. MALEVINSKY.

" ' J. N. MURPHY, S. A. Phenix, of Brooklyn.

" ' R. F. STEWART, for Ætna and Pennsylvania.

" ' J. L. WOOD, S. A. Home Ins. Co.

" ' J. B. GEORGE, S. A. Phœnix Ins. Co., of Hartford.

" ' L. N. GOLDBECK, for Hibernia Ins. Co., of N. O., La.

" ' Subject to nonwaiver clause as above.' ' "

The award made in accordance with the submission assessed the damages of plaintiff against defendant company at $1029.80, the amount of principal found by the jury.

The fire occurred on the 18th day of June, 1889, destroying plaintiff's. property as alleged.

The letter referred to in the court's charge is dated at Galveston, Texas,. September 21, and addressed to plaintiff, and is as follows:

" DEAR SIR: In reply to your letter of September 13, addressed to the Hibernia Insurance Company at New Orleans, and which has been referred to us as managers of the company in Texas for reply, we beg to advise you that the Hibernia Insurance Company denies all liability whatsoever under its policy issued to you on your stock of goods, which we are informed were lately burnt.

" We herewith beg to return to you alleged proofs of loss, and further to say that we have no use for these papers, inasmuch as we deny entire liability. We have written our agents, E. T. Eggleston & Co., exactly what we proposed to do in this matter, further than what we have already explained to you, and have told them that we would give you *as a compromise* what our lawyer would cost, which we do purely as a compromise, not recognizing any liability, but prefer to pay this money rather than to be put to the trouble of a lawsuit. If you are disposed to accept. that sum, you can advise Mr. Goldbeck. Very truly yours,

" C. E. ANGELL, G. A."

The charge of the court, as will be seen by inspection, plainly tells the jury that the submission of the amount of loss to appraisers " did not waive any other right the company had under the policy." The requested charge by defendant demanded no more than this. The court's charge told the jury that the letter of the 21st of September, 1889, waived the right of defendant to have the proof of loss presented within thirty days. Appellant does not object to this, nor does its requested charge ask any amendment of it.

The court having given substantially the charge requested, was not re-quired to repeat it.

According to our views of the rights of the parties as herein before ex-pressed, there was no error in refusing an instruction asked by defendant which denied plaintiff's right to recover in the absence of some proof of some affirmative action on the part of Goldbeck (one of the firm of defendant's agents), taken by him after he had full knowledge of the facts. If it should be admitted that nothing was done by Goldbeck after he was informed of the amount of other insurance on the goods, the company would not be exonerated. Such fact can not be admitted, however, as the evidence shows that he knew the facts at the time he delivered the original policy, and certainly at the time the additional price was paid for the increased risk. The charge asked would have been improper and misleading.

It was not error for the court to refuse to set aside the verdict. It was sustained by the testimony.

We find no error in the judgment of the court below, and it is affirmed.

*Affirmed.*

Delivered January 10, 1894.


Associate Justice KEY did not sit in this case.